UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DANIEL PERRY OSWALD,**

                Plaintiff,

v.                                          **Case No. 16-cv-991-pp**

**WILLIAM POLLARD, et al.,**

                Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S
MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE
FILING FEE (DKT. NO. 2) AND SCREENING THE COMPLAINT**

---

The plaintiff, who is representing himself, is a prisoner at Waupun Correctional Institution (WCI). He filed this lawsuit under 42 U.S.C. §1983, Dkt. No. 1, along with a motion for leave to proceed without prepayment of the filing fee, Dkt. No. 2. This order resolves that request and screens the plaintiff's complaint.

I.    <u>Motion for Leave to Proceed without Prepayment of Filing Fee</u>

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

1

On August 2, 2016, the court ordered the plaintiff to pay an initial partial filing fee of $26.74. Dkt. No. 6. The plaintiff paid the entire $350 filing fee on August 29, 2016. Accordingly, the court will grant the plaintiff's motion.

II. <u>Screening of the Plaintiff's Complaint</u>

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" <u>Denton v. Hernandez</u>, 504 U.S. 25, 31 (1992) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." <u>Neitzke</u>, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer

3

v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    A. *The Plaintiff's Allegations*

On August 1, 2014, the plaintiff was examined off-site at the "U.W.M. Spine Specialist/Clinic" for a "debilitating" back condition, consisting of a deteriorating spine with multiple bulging discs and pinched nerves. Dkt. No. 1 at 5. The clinic recommended that the plaintiff be moved to a lower tier, a recommendation that WCI immediately implemented. Id. In addition, on October 1, 2014, health services approved the plaintiff for an elevator pass so that he could go to medical and mental health treatments without having to use the stairs. Id.

On November 13, 2014, the plaintiff was placed in segregation. Id. The plaintiff notified the segregation officers of his elevator pass and alerted them that the Special Needs Committee had approved his use of various items as a result of ongoing medical problems. Id. at 6. These items included an extra pillow (for his back), a washcloth and towel, adult diapers, and clean linen as needed. Id. The Committee had approved the washcloth, towel, adult diapers, and clean linen because the plaintiff suffers from incontinence and often wets the bed at night. Id. at 7-8. He needs the extra towel, washcloth, and linens in the event he soils himself during the night. Id.

The officers in segregation allowed the plaintiff to use the elevator to attend medical and mental health appointments from November 13 through November 17, 2014. Id. at 6. However, on November 17, 2014, defendant Christine DeYoung told the plaintiff that he did not need the elevator pass while he was in segregation because "technically" there was no lower tier in segregation. Id. The plaintiff explains that segregation "is like a bi-level house." Id. at 7. The officers are located on the main floor, with the inmates being housed on upstairs and downstairs. Id. The plaintiff states that an inmate must go up twelve steps to get to the upper level or down six stairs to get to the lower level. Id.

The plaintiff states that he contacted defendant Belinda Schrubbe, the health services manager, about segregation's failure to honor his elevator pass, but she replied that "technically" there is no first floor in segregation, so he did not need to be accommodated. Id.

On November 21, 2014, defendant Jeffrey Manlove, the plaintiff's treating physician, examined the plaintiff. Id. The plaintiff informed him that segregation officers were not honoring his elevator pass. Id. He also told Manlove that his medical needs slip for items to accommodate his bed-wetting condition was set to expire on December 5, 2014. Id. Manlove told the plaintiff that he would look into both issues. Id.

On December 4, 2014, the plaintiff told DeYoung that his special needs slip was set to expire the following day. Id. at 8. DeYoung said she would get an updated slip, but she never returned. Id. The plaintiff alleges that from

5

December 5, 2014 through December 17, 2014, he was denied (he does not clarify by whom[1]) the items approved by the Special Needs Committee because the slip expired. Id. The plaintiff states that he was forced to eat, sleep, and sit (again, he does not clarify by whom) in urine-stained clothing and bedding.[2] Id. He was allowed to exchange his bedding once per week, and he was allowed to exchange his clothes three times total. Id.

When the plaintiff complained that his slip had expired, the only response he received explained that the Special Needs Committee meets only once per month so he would have to wait. Id. On December 17, 2014, the plaintiff received the updated slip. Id. at 9. He states that the staff gave him clean linen and apologized for the delay. Id.

The plaintiff was released from segregation on December 29, 2014, at which time his accommodations (lower tier, elevator pass) were reinstated. Id.

On January 20, 2015, DeYoung examined the plaintiff based on his complaints of migraines, which were accompanied by blurry vision, vomiting and extreme pain. Id. DeYoung told the plaintiff that she would consult with Manlove, but according to the plaintiff, she did not. Id. On February 5, 2015, the plaintiff saw DeYoung again; she explained that she had been busy and

---

[1] Although the plaintiff alleges that DeYoung, Schrubbe, and Manlove failed to provide him with an updated slip, he does not allege that they are the ones who refused to give him clean clothes or linen after he soiled himself.
[2] The plaintiff does not clarify how many days he lived in soiled clothing; he states only that he wet the bed about four times per week, making it "plausible" that he "went without these items and had to live without these basic life necessities for at least ten to twelve days." Id. at 8.

6

hadn't spoken to Manlove, but she assured the plaintiff that she would. Id. at 10.

The plaintiff states that on February 5, 2015, Manlove verbally ordered the migraine prescription Nortriptyline, but DeYoung failed to enter the order. Id. The plaintiff filed inmate complaints and inquired about the medication for his migraines, but DeYoung refused to check on the order and/or consult the plaintiff's medical file. Id. at 11. The plaintiff finally received the medication on May 15, 2015. Id. He learned later that defendant Jane Doe #1 forgot to place the order. Id.

Finally, the plaintiff states that on October 28, 2015, a nurse practitioner (not a defendant) ordered an appointment with the U.W.M. Spine Clinic for his ongoing back problems. Id. at 11-12. He alleges that Jane Doe #2 failed to schedule the appointment. Id. The nurse practitioner followed up on February 23, 2016, discovered the appointment had not been scheduled, and demanded that it be scheduled immediately. Id. at 12.

B. *The Court's Analysis*

As a threshold matter, the court will dismiss defendants William Pollard, Brian Foster, and Stadtmueller. It appears the plaintiff named these individuals because they were the supervisors of the individuals the plaintiff believes deprived him of his constitutional rights; however, 42 U.S.C. §1983 does not allow plaintiffs to sue supervisors for the errors of their subordinates. See Pacelli v. deVito, 972 F.2d 871, 878 (7th Cir. 1992); West By and Through Norris v. Waymire, 114 F.3d 646, 649 (7th Cir. 1997)("[T]he doctrine of

7

*respondeat superior* is not available to a plaintiff in a section 1983 suit."). Instead, a plaintiff may state a claim only against the particular individuals who he believes deprived him of his rights. Because Pollard, Foster and Stadtmueller were not personally involved in the alleged deprivations, the plaintiff does not state claims against them.

With regard to the plaintiff's Eighth Amendment claims against the other defendants: "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (i.e., that the medical needs be sufficiently serious) and a subjective element (i.e., that the officials act with a sufficiently culpable state of mind). Id.

At this point, the plaintiff has made sufficient allegations for the court to allow him to proceed on his claim that defendants Manlove, Schrubbe, and DeYoung were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, based on their failures to enforce compliance with his elevator pass while he was in segregation and their failures to update his special needs slip prior to its expiration. The plaintiff also may proceed on a deliberate indifference claim against DeYoung based on his allegations that she failed to follow through on his requests for medication to address his migraines. Finally, the plaintiff may proceed on a deliberate indifference claim against Jane Doe #1 and Jane Doe #2 based on his allegations that they failed

8

to order his medication and timely schedule his appointment with a specialist.[3] The plaintiff may also proceed on state-law negligence claims against Manlove, Schrubbe, DeYoung, Jane Doe #1, and Jane Doe #2.[4]

The plaintiff also seeks to pursue claims against these defendants under the American with Disabilities Act (ADA) and the Rehabilitation Act (RA). To establish a violation of Title II of the ADA, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (quoting Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir. 1996)); see also 42 U.S.C. §12132. Analysis under the ADA and the RA is essentially the same, except that the RA includes an additional element requiring that the entity denying access receive federal funds. Jaros v. Illinois Dept. of Corrections, 684 F.3d 667, 671-72 (7th Cir. 2012). Importantly, "because the ADA addresses its rules to employers, places of public accommodation, and

---

[3] The plaintiff alleges that Jane Doe #1 "forgot" to order his medication, which sounds like negligence. Although negligence is not actionable under §1983, the court will allow the plaintiff to proceed on this claim. Courts must construe *pro se* plaintiff's pleadings liberally, and it may be that the plaintiff mischaracterized Jane Doe #1's failure to order the medication without understanding the significance of his word choice. Without discovery, it is doubtful that the plaintiff can know at this stage whether her failure to order the medication was intentional or just a mistake.

[4] If the defendants answer, the court will enter a scheduling order setting deadlines for discovery and the filing of dispositive motions. At that time, the plaintiff may use discovery to identify the Jane Doe defendants. Once identified, the plaintiff may file a motion to substitute the proper names for the Doe placeholders.

9

other organizations, not to the employees or managers of these organizations" a plaintiff may not proceed against defendants in their individual capacities—the proper defendant is the organization[5]. Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds).

Although it is not clear, the court believes the plaintiff is alleging that his access to WCI's medical and mental health services was made more difficult by the failure of the medical staff to require compliance with his elevator pass. The plaintiff's complaint demonstrates that WCI (as an organization) was able and willing to accommodate the plaintiff's disability by giving him an elevator pass and letting him live on a lower tier; it was the individual defendants who refused to implement or chose to deviate from that accommodation. As noted above, however, individual defendants cannot be held liable under the ADA. Because the plaintiff's allegations do not support the plaintiff's assertion that *WCI* failed to accommodate his disability, the plaintiff may not proceed on this claim.

The plaintiff also fails to state an equal protection claim, because he fails to allege that he was treated differently from those who were similarly situated, which is required to state such a claim. See Matthews v. Raemisch, 513 Fed.Appx. 605, 608 (7th Cir. 2013) (unpublished). Further, the plaintiff cannot state a claim under the Health Insurance Portability and Accountability Act of 1996 (HIPPA), because HIPPA does not provide a private right of action.

---

[5] A plaintiff may pursue an ADA/RA claim against an entity such as this one by suing an individual defendant, such as the warden, in his official capacity. In that capacity, the individual defendant functions as a proxy for the entity.

10

Carpenter v. Phillips, 419 Fed.Appx. 658, 659 (7th Cir. 2011) (unpublished) (citations omitted).

Finally, the court notes that, with some additional information, the plaintiff may be able to state an Eighth Amendment conditions of confinement claim based on his allegations that he was forced to sit, sleep, and eat in soiled clothing and on soiled linen during a ten- to twelve-day period. As noted earlier in this opinion, the plaintiff does not clarify how many times during that ten- to twelve-day period he lived in soiled clothing, nor does he state whether or who he asked for clean clothes or linen or if such requests were denied. Without that information, the court will not allow him to proceed on a conditions-of-confinement claim. If the plaintiff thinks he has adequate facts to state a conditions-of-confinement claim, he may file an amended complaint. The court reminds the plaintiff that an amended complaint will replace the original complaint, so he cannot just refer to or supplement the original complaint, nor may he incorporate the original complaint by reference; he must file a *completely new* complaint that stands on its own. If the plaintiff chooses to file an amended complaint, the court will screen it pursuant to 28 U.S.C. §1915A.

III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the clerk of court will send copies of the plaintiff's complaint and this order to the Wisconsin

Department of Justice for service on defendants Manlove, Schrubbe, and DeYoung.

The court also **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Manlove, Schrubbe, and DeYoung shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court further **ORDERS** that defendants Pollard, Foster, and Stadtmueller are **DISMISSED**.

The court further **ORDERS** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court advises the plaintiff that if he fails to make a timely submission, the court may dismiss this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address.

Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 6th day of September, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge