UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DANIEL PERRY OSWALD,**

        Plaintiff,

v.                                     **Case No. 16-cv-991-pp**

**JEFFREY MANLOVE, et al.,**

        Defendants.

---

**DECISION AND ORDER DENYING AS MOOT THE PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (DKT. NO. 15), GRANTING HIS MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (DKT. NO. 20), DENYING HIS MOTION FOR THE APPOINTMENT OF COUNSEL (DKT. NO. 16), AND GRANTING DEFENDANTS' MOTION TO SCREEN AMENDED COMPLAINTS (DKT. NO. 26)**

---

On September 6, 2016, the court screened the plaintiff's complaint, and allowed him to proceed on Eighth Amendment and negligence claims against defendants Jeffrey Manlove, Belinda Schrubbe, Kristine DeYoung, and two Jane Doe nurses. Dkt. No. 11. The court also explained to the plaintiff that, with some additional information, he might be able to state an Eighth Amendment conditions-of-confinement claim. Id. at 11. The court noted that if the plaintiff believed he had adequate facts to state such a claim, he could file an amended complaint. Id.

On September 12, 2016, the plaintiff filed a motion for leave to amend his complaint, dkt. no. 15, and a motion for the appointment of counsel, dkt. no. 16. The plaintiff explained that the only changes he made to his original

1

complaint were to remove the proposed defendants that the court had dismissed in its screening order and to add additional allegations in an effort to state a conditions-of-confinement claim. Id. On October 14, 2016, the plaintiff filed a motion seeking to further amend his complaint. Dkt. No. 20. His proposed second amended complaint keeps the revisions made in his proposed first amended complaint, adds a new defendant (Nurse Schroeder), and adds allegations relating to the denial of special shoes. Id.

Federal Rule of Civil Procedure 15(a) requires courts to liberally grant requests to amend pleadings. The court will deny the plaintiff's first motion to amend as moot (because the first proposed amended complaint would be superseded by his proposed second amended complaint), it will grant the plaintiff's second motion, and screen the second amended complaint pursuant to 28 U.S.C. §1915A. The court also denies the plaintiff's motion for the appointment of counsel, dkt. no. 16, and by screening the second amended complaint, grants the defendants' motion to screen, dkt. no. 26.

I. Screening of the Plaintiff's Second Amended Complaint

As the court already explained in its original screening order, the law requires the court to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint—all of it, or just part of it—if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which

2

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

### A. The Plaintiff's Allegations

On August 1, 2014, the plaintiff was examined off-site at the "U.W.M. Spine Specialist/Clinic" for a "debilitating" back condition, consisting of a deteriorating spine with multiple bulging discs and pinched nerves. Dkt. No. 20-1 at 4. The clinic recommended that the plaintiff be moved to a lower tier, a

recommendation that Waupun Correctional Institution (WCI) immediately implemented. Id. In addition, on October 1, 2014, health services approved the plaintiff for an elevator pass, so that he could go to medical and mental health treatments without having to use the stairs. Id.

On November 13, 2014, the plaintiff was placed in segregation. Id. The plaintiff notified the segregation officers of his elevator pass and alerted them that the Special Needs Committee had approved his use of various items as a result of ongoing medical problems. Id. at 5-6. These items included an extra pillow (for his back), a washcloth and towel, adult diapers, and clean linen as needed. Id. at 6. The Committee had approved the washcloth, towel, adult diapers, and clean linen because the plaintiff suffers from incontinence, and often wets the bed at night. Id. at 6-7. He needs the extra towel, washcloth, and linens in the event he soils himself during the night. Id.

The officers in segregation allowed the plaintiff to use the elevator to attend medical and mental health appointments from November 13 through November 17, 2014. Id. at 6. On November 17, 2014, however, defendant Christine DeYoung told the plaintiff that he did not need the elevator pass while he was in segregation because "technically" there was no lower tier in segregation. Id. The plaintiff explains that segregation "is like a bi-level house." Id. at 6. The officers are located on the main floor, with the inmates being housed upstairs and downstairs. Id. The plaintiff states that an inmate must go up twelve steps to get to the upper level or down six stairs to get to the lower level. Id.

4

The plaintiff states that he contacted defendant Belinda Schrubbe, the health services manager, about segregation's failure to honor his elevator pass, but she replied that "technically" there is no first floor in segregation, so he did not need to be accommodated. Id.

On November 21, 2014, defendant Jeffrey Manlove, the plaintiff's treating physician, examined the plaintiff. Id. The plaintiff informed him that segregation officers were not honoring his elevator pass. Id. He also told Manlove that his medical needs slip for items to accommodate his bed-wetting condition was set to expire on December 5, 2014. Id. Manlove told the plaintiff that he would look into both issues. Id.

On December 4, 2014, the plaintiff told DeYoung that his special needs slip was set to expire the following day. Id. at 7. DeYoung said she would get an updated slip, but she never returned. Id. The plaintiff alleges that from December 5, 2014 through December 17, 2014, John Doe Officer refused to give the plaintiff the items approved by the Special Needs Committee because the slip had expired. Id. at 7-8.

Specifically, the plaintiff asserts that on Tuesday, December 9, 2014, he awoke to a soiled adult diaper and a urine stain on his sheets. Id. at 8. Because it was a shower day, John Doe Officer gave the plaintiff new clothes, but he refused to give him new linens, explaining that new linens were given only on Sundays. Id. On December 11, 2014, the plaintiff awoke to soiled sheets, underwear (the plaintiff was no longer receiving adult diapers), and a blanket. Id. The plaintiff states that he slept only in his underwear because he

5

feared he would wet the bed and he did not want to get his clothes dirty. Id. He explains that he rinsed his underwear in his sink. Id. On December 14, 2014, John Doe Officer gave the plaintiff new linens because it was linen exchange day, but he would not give him a new blanket. Id. Finally, on December 17, 2014, the plaintiff once again wet the bed and asked for new linen and an adult diaper. Id. at 9. John Doe Officer stated that there were no adult diapers in the medication cart, and the plaintiff was no longer entitled to adult diapers or linen on demand. Id.

On December 17, 2014, the Special Needs Committee renewed his slip, and at about 10:00 p.m. the third-shift officer gave the plaintiff clean linen and apologized for the delay. Id.

During this period, the plaintiff requested on numerous occasions that his special needs slip be renewed. Id. at 7-8. The only response he received was that the Special Needs Committee met only once a month, so he would have to wait. Id. at 7.

The plaintiff was released from segregation on December 29, 2014, at which time his accommodations (lower tier, elevator pass) were reinstated. Id. at 9.

On January 20, 2015, DeYoung examined the plaintiff based on his complaints of migraines, which were accompanied by blurry vision, vomiting and extreme pain. Id. DeYoung told the plaintiff that she would consult with Manlove, but according to the plaintiff, she did not. Id. On February 5, 2015, the plaintiff saw DeYoung again; she explained that she had been busy and

hadn't spoken to Manlove, but she assured the plaintiff that she would. Id. at 10.

The plaintiff states that on February 5, 2015, Manlove verbally ordered the migraine prescription Nortriptyline, but DeYoung failed to enter the order. Id. The plaintiff filed inmate complaints and inquired about the medication for his migraines, but DeYoung refused to check on the order and/or consult the plaintiff's medical file. Id. at 11. The plaintiff finally received the medication on May 15, 2015. Id. at 11. He learned later that defendant Jane Doe #1 forgot to place the order. Id.

The plaintiff also alleges that, on October 28, 2015, a nurse practitioner (not a defendant) ordered an appointment with the U.W.M. Spine Clinic for the plaintiff's ongoing back problems. Id. at 11-12. He alleges that Jane Doe #2 failed to schedule the appointment. Id. The nurse practitioner followed up on February 23, 2016, discovered the appointment had not been scheduled, and demanded that it be scheduled immediately. Id. at 12.

Finally, the plaintiff alleges that in the beginning of 2016, the plaintiff received splints and insoles from a foot care place in Fond du Lac. Id. at 13. He states that, after a few weeks, he noticed that his shoes did not fit properly with the insoles. Id. The plaintiff alleges that a nurse placed a note in his file stating that he needed to go back to the foot place and be given new shoes. Id. He states that he saw Nurse Schroeder multiple times, and that she stated that "it" was cleared by Manlove. Id. (The court is not clear what "it" refers to.) The plaintiff states that after about seven months, he asked about the special shoes

but was told (it is unclear by whom) that "he was denied" (it is unclear by whom) and no appointment was scheduled. Id.

**B. Analysis**

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). Id.

As the court explained in its original screening order, the plaintiff has made sufficient allegations for the court to allow him to proceed on his claim that defendants Manlove, Schrubbe, and DeYoung were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, based on their failures to enforce compliance with his elevator pass while he was in segregation and their failures to update his special needs slip prior to its expiration.[1] The court also will allow the plaintiff to proceed on a deliberate indifference claim against DeYoung, based on his allegations that she failed to follow through on his requests for treatment of his migraines. Finally, the court

---

[1] In the section titled "Cause of Action," the plaintiff alleges that William Pollard, Brian Foster, and Stadtmueller also violated his Eighth Amendment rights. Dkt. No. 20-1 at 14-15. These individuals are not identified in the caption of the plaintiff's second amended complaint as defendants. In addition, the plaintiff explained in his motion for leave to file his first amended complaint that he is no longer pursuing claims against these defendants. Dkt. No. 15. The court concludes that the plaintiff simply forgot to remove these allegations from his second amended complaint, and the court will not address them.

8

will allow the plaintiff to proceed on a deliberate indifference claim against Jane Doe #1, based on his allegations that she failed to order his medication.[2] The court also will allow the plaintiff to proceed on medical malpractice claims against Manlove, Schrubbe, and DeYoung, and on a negligence claim against Jane Doe #1.

The court will not, however, allow the plaintiff to proceed on a deliberate indifference claim against Jane Doe #2 based on his allegation that she failed to schedule him for a medical appointment. This claim is not properly joined with the claims against the other defendants. Under Federal Rule of Civil Procedure 20, claims involving different defendants may be joined in a single case only if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and if there is a question of law or fact common to all defendants. The plaintiff's allegation that Jane Doe #2 failed to schedule him for an appointment for his back pain is an event that is separate from the events surrounding the treatment he received for his special needs slip and accommodations. Such a claim would not involve any question of law or fact in common with the plaintiff's deliberate indifference claims against Manlove, Schrubbe, DeYoung, or Jane Doe #1. Accordingly, the court will dismiss the

---

[2] The plaintiff alleges that Jane Doe #1 "forgot" to order his medication, which sounds like negligence. Although negligence is not actionable under §1983, the court will allow the plaintiff to proceed on this claim. Courts must construe *pro se* plaintiffs' pleadings liberally, and it may be that the plaintiff mischaracterized Jane Doe #1's failure to order the medication without understanding the significance of his word choice. Without discovery, it is doubtful that the plaintiff can know whether her failure to order the medication was intentional or just a mistake, and allowing him to proceed will allow him to obtain that discovery.

9

claims against Jane Doe #2. If the plaintiff wants to pursue a claim against her, he must file a separate complaint and pay a separate filing fee.[3]

Nor has the plaintiff stated a claim against Nurse Schroeder or Manlove based on his allegations that he did not receive proper treatment for his foot. He alleges only that, after his foot issues were flagged for Schroeder, she communicated to the plaintiff that Manlove had "cleared it." Although the court is unsure what "it" refers to, it is reasonable to infer from the plaintiff's allegations that Schroeder presented the plaintiff's issue to Manlove and that Manlove approved some course of treatment. Such conduct does not amount to deliberate indifference. The plaintiff goes on to allege that nothing happened, and that he was later told that his request had been denied, but he does not indicate who ultimately denied the request. The court will not speculate on that point.

To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001).

---

[3] The court erroneously allowed the plaintiff to proceed against Jane Doe #2 in its original screening order, dkt. No. 11 at 8-9, and it now corrects that error.

10

Here, the plaintiff alleges that because of a medical condition, he often wet his bed. He also alleges that John Doe Officer knew of the plaintiff's medical condition. Despite this, the plaintiff alleges that on two separate occasions during the course of a week after his special needs slip had expired, John Doe Officer refused to give the plaintiff new linen or clothes, requiring him to wait until the scheduled days for the exchange of those items. As a result, the plaintiff had to sleep in soiled underwear and on soiled linen for a little less than a week.

Given the short duration, it is a close call whether these circumstances constitute an "extreme deprivation" that deprived the plaintiff of "the minimal civilized measure of life's necessities." At this stage, the court concludes that the plaintiff may proceed on this claim against John Doe Officer. [4] See, DeSpain v. Uphoff, 264 F.3d 965, 974-75 (10th Cir. 2001) (collecting cases holding that courts are especially cautious about condoning conditions that require inmates to live in close proximity to their own waste because such conditions evoke both health concerns and general standards of dignity).

Finally, the court had addressed in its original screening order the plaintiff's failure to state claims under the American with Disabilities Act (ADA), the Rehabilitation Act (RA), and the Equal Protection Clause. The plaintiff once again includes those claims in his second amended complaint, but the court

---

[4] If the defendants answer, the court will enter a scheduling order setting deadlines for discovery and the filing of dispositive motions. At that time, the plaintiff may use discovery to identify the Jane Doe and John Doe defendants. Once he identifies them, the plaintiff may file a motion to substitute the proper names for the Doe placeholders.

11

suspects he does so only because he forgot to remove them when he revised his original complaint. The court refers plaintiff to its original screening order for an explanation of why it will not allow him to proceed on those claims. See Dkt. No. 11, p. 9-11.

In summary, the plaintiff may proceed on an Eighth Amendment deliberate-indifference claim against Manlove, Schrubbe, DeYoung, and Jane Doe #1, and an Eighth Amendment conditions-of-confinement against John Doe Officer. The plaintiff may also proceed on medical malpractice claims against Manlove, Schrubbe, and DeYoung, and on a negligence claim against Jane Doe #1. The court will dismiss Jane Doe #2 and Nurse Schroeder.

II.    Motion to Appoint Counsel

On September 12, 2016, the plaintiff filed a motion to appoint counsel. Dkt. No. 16. The plaintiff explained that he cannot afford counsel and his imprisonment greatly limits his ability to litigate this case. Id. He also states that he has mental health problems and has been receiving help from another inmate. Id. He explains that he just received approval to be transferred to a minimum security facility, so he no longer will have access to that help. Id. Finally, the plaintiff states that he has contacted at least four attorneys in an effort to obtain counsel on his own, but that no one has agreed to help him. Id.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(3)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). After a plaintiff demonstrates that he has

made a reasonable attempt to hire counsel, the court must decide "whether the difficulty of the case—legally and factually—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

Almost every inmate who files a lawsuit asks the court to recruit a lawyer to represent him. Most have no money, have no legal training, cannot afford a lawyer, and have only limited access to the law library. Many have medical and mental health issues. The court does not have the resources to pay lawyers to represent everyone who asks, and there are not enough volunteer lawyers to provide counsel for everyone who asks. This means that the court will recruit counsel only in those cases where the issues have become so complicated that the plaintiff cannot explain them himself.

The court record demonstrates that, at this time, the plaintiff is competent to present the issues in his case himself. He has laid out, clearly and succinctly and in legible form, the facts of the case. The court understands his claim. The court acknowledges that the plaintiff has received help up to this point, but it is unclear when, if ever, that help will stop, or whether the plaintiff even needs help to continue handling his case on his own.

If the defendants file an answer to the plaintiff's second amended complaint, the court will enter a scheduling order. At that point, the plaintiff

13

may serve the defendants with interrogatories (written questions) and/or document requests to obtain information and documents that support his version of the events. See Fed. R. Civ. Pro. 33 and 34. Nothing indicates that the plaintiff is unable to handle these tasks on his own. There may come a point in the case where the plaintiff becomes unable to handle the legal issues in the case, but that point has not arrived. If and when that point comes, he can renew his request that the court recruit counsel to represent him.

### III.  Defendants' Motion to Screen Amended Complaints

By virtue of this order, the court grants the defendants' motion to screen the plaintiff's amended complaints. Dkt. No. 26.

### IV.  Conclusion

The court **DENIES AS MOOT** the plaintiff's motion for leave to file an amended complaint. Dkt. No. 15. The court **GRANTS** the plaintiff's motion for leave to file a second amended complaint. Dkt. No. 20. The court directs the Clerk of Court to docket the plaintiff's second amended complaint as the operative complaint. Dkt. No. 20-1. The second amended complaint is the operative complaint in this lawsuit.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel (Dkt. No. 16).

The court **GRANTS** the defendants' motion to screen the amended complaints. Dkt. No. 26.

The court further **ORDERS** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the

14

clerk of court will send copies of the plaintiff's second amended complaint and this order to the Wisconsin Department of Justice for service on defendants Manlove, Schrubbe, and DeYoung.

The court also **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Manlove, Schrubbe, and DeYoung shall file a responsive pleading to the amended complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that defendants Jane Doe #2 and Nurse Schroeder are **DISMISSED**.

Dated in Milwaukee, Wisconsin this 23rd day of November, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge